```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

Wayne Dupee,                  :
     Plaintiff,               :
                              :
v.                            :     Case No. 3:05cv344 (JBA)
                              :
Klaff's, Inc.,                :
     Defendant.               :
```

**RULING ON PLAINTIFF'S MOTION FOR ADVERSE INFERENCE
INSTRUCTION FOR SPOLIATION OF EVIDENCE [DOC. # 37]**

Plaintiff Wayne Dupee moves for an adverse inference instruction to be given at trial on the basis of the alleged disappearance of doctors' notes excusing him from work for medical reasons from his personnel file. <u>See</u> Pl. Mot. [Doc. # 37]. Plaintiff contends that "[t]hese notes provide justification for his 'unexecused' absences, and constitute vital evidence supporting [his] claims. The defendant's Chief Financial Officer admitted that Dupee provided these notes for his medical absences, and was 'surprised' that they could not be found once the case was filed." <u>Id</u>. Defendant Klaff's, Inc. ("Klaff's) objects, arguing that plaintiff has not met his burden of demonstrating entitlement to a destruction or spoliation of evidence instruction because the evidence shows that the "medical notes do not, and never have existed." Def. Opp [Doc. # 44] at 1. For the reasons that follow plaintiff's motion will be denied, without prejudice to renew at trial.

1

**I.    Factual Background**

As set out in more detail in the Court's Ruling on Defendant's Motion for Summary Judgment, see [Doc. # 49], plaintiff commenced this action against Klaff's seeking redress for alleged retaliatory discharge in violation of Conn. Gen. Stat. § 31-290a, alleged violation of the Federal Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., alleged violation of the Connecticut Family and Medical Leave Act, Conn. Gen. Stat. § 31-55pp et seq., alleged failure to compensate plaintiff for time lost due to a workers compensation claim in violation of Conn. Gen. Stat. § 31-312, and alleged negligent infliction of emotional distress, all arising out of his treatment and eventual termination from his position as a security officer at Klaff's. As described in the Summary Judgment Ruling, whether plaintiff provided defendant with doctor's notes for each of his claimed medical absences will be a matter for the jury to determine at trial, and plaintiff now claims that he is entitled to an adverse inference instruction on the basis that defendant destroyed or misplaced such notes plaintiff provided to it.

Plaintiff testified that he always provided doctor's notes when he was out for medical reasons, see Dupee Dep. [Doc. # 28, Ex. B] at 61-62, 64, 112, but defendant did not produce any such notes in response to Dupee's request for production seeking "[a]ny documents relating to Mr. Dupee's medical leaves and/or

workers' compensation claim." [Doc. # 39, Ex. 13].  Plaintiff also refers to the following testimony of Klaff's Chief Financial Officer, John Petito:

> Q. In this case is it fair to say that Wayne had to see several doctors after this accident in January of 2003?
> A. I think he did.
> Q. That's your recollection?
> A. That's my recollection.
> Q. All right.  When did he first start failing to give Klaff's proper notice of his medical appointments?
> A. I don't know if I can answer that question.  I believe that any time that we pressed him, we ultimate [sic] got the information.
> Q. And by "information" you mean a medical note?
> A. And as long as he gave us a medical note and it was a valid reason to leave work, there was no problem.
> . . .
> Q. The medical notes that you mentioned that you pressed Wayne for and ultimately you received, do you know what happened to those notes?
> A. No.
> Q. Have you seen them recently?
> A. No.
> Q. All right.  Because they were not in his personnel file.
> A. I know.
> Q. Okay.  Does anyone have any idea where they might be?
> A. We looked for them and we could not find them.
> Q. Does that surprise you to any degree?
> A. Yes, I don't know where that documentation is.

Petito Dep. [Doc. # 44-2] at 47-49.

Defendant claims that plaintiff never provided notes for the absences for which he was terminated, specifically those on January 29, 2004, February 12, 2004, and February 31, 2004. Defendant contends that "[t]hose absences were unexcused absences and no notes were ever provided to defendant substantiating plaintiff's claim that he was receiving medical attention on

those days." Def. Opp. at 4.  Defendant references the deposition testimony of Juan Caceres, manager of defendant's human resources department:

> Q. All right.  Did you ever see any medical notes substantiating the time off that he took for medical reasons?
> A. No.  Otherwise, they would have been in his file.
> Q. They should have been in his file?
> A. Yes.
> . . .
> Q. If Mr. Dupee had provided medical notes, and I think your testimony was that you don't recall ever seeing any medical notes for the absences that he had; is that right?
> A. That's correct.
> Q. If he had provided them, my understanding is that they would have been placed into his personnel file; is that right?
> A. That's correct.

Caceres Dep. [Doc. # 44-5] at 53, 65.  Defendant also notes that prior to the filing of its Motion for Summary Judgment, it received, by way of authorization from plaintiff, plaintiff's medical file from his doctor, Dr. Joanne C. Reisch, which contains a note dated February 28, 2004 excusing plaintiff from work on February 21, 2004 for illness.  Defendant argues that "[t]his note is highly suspect considering it was never provided to defendant and was written the day after plaintiff was terminated purportedly excusing him for an absence that had taken place seven (7) days prior.  Nonetheless, the note highlights the fact that defendant was not notified of plaintiff's absence on February 21, 2004.  It is interesting to note that Dr. Reisch's records indicate that plaintiff has a sore throat and an apparent

4

sinus issue; issues unrelated to any injuries he may have suffered as a result of the 2003 accident." Def. Opp. at 4 n.1.

## II. Standard

Spoliation of evidence has been defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001). "The spoliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." Id. "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002). "The 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to breach a duty to preserve it, or negligently." Id. at 108. District courts are to apply a "case-by-case approach to the failure to produce relevant evidence . . .

because such failures occur along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality." Id. (internal quotation omitted).

**III. Discussion**

    A.   Duty

An obligation to preserve evidence "usually arises when a party has notice that the evidence is relevant to litigation . . . but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Byrnie, 243 F.3d at 107. Additionally, the existence of a regulation requiring preservation "can create the requisite obligation to retain records, even if litigation involving the records is not reasonably foreseeable. For such a duty to attach, however, the party seeking the inference must be a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule." Id. at 109.

Here, the FMLA imposes on employers a duty to "maintain records that must disclose the following: . . . Copies of employee notices of leave furnished to the employer under FMLA, if in writing . . . Copies may be maintained in employee personnel files," and further provides that "[r]ecords and documents relating to medical certifications, recertifications or medical histories of employees or employees' family members, created for purposes of FMLA, shall be maintained as confidential

medical records in separate files/records from the usual personnel files . . ."  29 C.F.R. § 825.500(c)(4), (g).  Further, plaintiff was a member of the class the FMLA was designed to protect, as he had "a serious heath condition that ma[de] [him] unable to perform the functions of [his] position."  29 U.S.C. § 2612(a)(1).

Thus, plaintiff can satisfy the first element of a claim for an adverse inference instruction.  However, even where a regulation supplies the duty to preserve records, "a party seeking to benefit from an inference of spoliation must still make out the other usual elements of a spoliation claim."  Byrnie, 243 F.3d at 109.

B.   Culpability

As noted above, district courts apply a "case-by-case approach to the failure to produce relevant evidence" because such failures "occur along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality." Residential Funding Corp., 306 F.3d at 108.  Thus, "[t]he sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence."  Id.  Here, assuming arguendo that the claimed notes did exist in the possession of defendant, which issue will be addressed infra Pt. III.C., plaintiff has adduced evidence that the records were lost

7

or destroyed due to no greater degree of intentionality than negligence.  See Petito Dep. at 47-49 (acknowledging that at least when "[t]hey pressed [plaintiff], [they] ultimate [sic] got the information," but that to his surprise the notes were not in plaintiff's personnel file and "[t]hey looked for them and [they] could not find them").

    C.   Relevance

The Second Circuit has stated that "'relevant' in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence.  Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." Residential Funding Corp., 306 F.3d at 108-09.  The duty is on the plaintiff "to produce some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files."  Byrnie, 243 F.3d at 108.  The Second Circuit has observed that "[s]everal courts have held that destruction of evidence in violation of a regulation that requires its retention can give rise to an inference of spoliation."  Id. at 109 (citing cases holding that the violation of a record-retention regulation creates a presumption that the missing documents contained evidence that

would have bolstered the plaintiff's cases).

Here, however, notwithstanding evidence that defendant may have violated the FMLA's record- and notice-retention regulation, plaintiff has not come forward with sufficient evidence demonstrating that the allegedly destroyed notes were in fact in existence.[1] While plaintiff testifies generally that he always provided notes when he was absent for medical reasons and Mr. Petito acknowledged that when pressed plaintiff would provide doctor's notes, at his deposition plaintiff could not specifically remember the circumstances of his absences on January 29, February 12, and February 21, 2004, and he has adduced no other evidence showing that he provided notes for those specific absences which defendant claims were un-excused.[2] While plaintiff's production of a note from his doctor related to his February 21, 2004 absence, which defendant did not have in its personnel file, suggests the possible existence of other such notes which defendant may have destroyed or misplaced, such an

---

[1] The issue in this case is slightly different than that in other spoliation cases, because here the issue is not whether the allegedly destroyed/lost notes would be favorable to plaintiff's case, as they clearly would be, but rather whether they ever actually existed.

[2] Defendant's suggestion that only notes related to treatment for plaintiff's accident-related injuries are relevant is incorrect – notes excusing any of plaintiff's absences for any medically-related problem (including ordinary sickness or other unrelated injuries) would be relevant as they would support plaintiff's claim that defendant's proffered reason for terminating plaintiff – un-excused absences – is pretextual.

inference is contradicted by Caceres's testimony that he does not recall having seen any medical notes for plaintiff's absences. Where the existence or non-existence of the notes claimed by plaintiff is crucial to both plaintiff's claim and defendant's defense, without more evidence of the existence of such documents, the Court declines to give the jury an adverse inference instruction based on this record.

**IV.     Conclusion**

For the foregoing reasons, because plaintiff has not met his burden of identifying evidence showing that the claimed notes actually existed, the Court DENIES his Motion [Doc. # 37] without prejudice to renew his request for an adverse inference instruction at trial if additional evidence of either intentionality of destruction or misplacement of the documents, or of relevance of the claimed documents, is presented.

                                        IT IS SO ORDERED.

                                          /s/
                              Janet Bond Arterton
                              United States District Judge

**Dated at New Haven, Connecticut this 8th day of November, 2006.**